UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| LEONARD BRADFORD, # 131806, a/k/a LENARD BRADFORD-BEY, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:14-cv-679 |
| v. | ) ) Honorable Paul L. Maloney |
| DANIEL HEYNS, et al., | ) ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) ) ) |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff is an inmate at the Kinross Correctional Facility (KCF), located in Kincheloe, Michigan. (docket # 48, Page ID 319). This lawsuit arises out of conditions of plaintiff's confinement at the Ionia Maximum Correctional Facility (ICF) on December 31, 2011, and February 7, 2012, through early March 2012. On June 25, 2014, plaintiff filed this lawsuit. He named Director of the Michigan Department of Corrections (MDOC) Daniel Heyns, MDOC's Special Activities Coordinator Michael Martin, and "chaplaincy board" member Robert Wilcoxson-Bey as defendants. In addition, he named four MDOC employees at ICF as defendants: Warden John Prelesnik, Chaplain Gary Wyma, Mail Room Supervisor Mark Pattison, and Acting Deputy Warden Cathleen Stoddard.

Plaintiff alleges that he "was incarcerated at the Ionia Correctional Facility (ICF) during the events described in []his complaint." (Compl. ¶ 3, Page ID 3). He states that he is a practitioner of "Shi'a/Ismaili Islam." (*Id.* at ¶ 12, Page ID 4). He alleges that on December 31, 2011, and February 7, 2012, ICF's Mail Room Supervisor Pattison "confiscated" two items: (1)

"The Divine Constitution of the Moorish America," and (2) a "Circle Seven Charm sacred necklace." (*Id.* at ¶ 11, Page ID 4).  Plaintiff alleges that Warden Prelesnik upheld the rejection of the "Circle Charm" necklace. (*Id.* at ¶ 15, Page ID 5).

Plaintiff alleges that on February 10, 2013, he "forwarded a memorandum to defendants Michael Martin, John Prelesnik, and G[ary] Wyma requesting recognition" of "Moorish Science Temple of America Reincarnate, 1926/1928 body" as a religious group. He alleges that Martin and Wyma did not grant his request. (*Id.* at ¶¶ 12, 14, Page ID 4-5). Plaintiff alleges that on March 2, 2013, he "submitted a religious proposal to defendant[s] Daniel Heyns, Michael Martin and G. Wyma requesting the opportunity to conduct Shi's/Ismaili Islamic religious worship and service" at ICF and they did not answer his request. (*Id.* at ¶¶ 16, 17, Page ID 7).

Plaintiff alleges that defendant Wilcoxson-Bey, is a member of the "MDOC chaplaincy board." (*Id.* at ¶ 6, Page ID 3). The only other factual allegation made against Mr. Wilcoxson-Bey is that plaintiff directed communications to him. (*Id.* at ¶ 24, Page ID 7). Plaintiff alleges that defendant Stoddard was responsible for transferring prisoners from ICF and MTU and states that his transfer from ICF and MTU to KCF constituted retaliation. (*Id.* at ¶¶ 10, 18-19, Page ID 4-6).

Plaintiff alleges that defendants violated his First Amendment rights and statutory rights under RLUIPA.[1] He sues all defendants in their official and individual capacities. (*Id.* at ¶¶ 4-10, Page ID 3-4). Plaintiff seeks declaratory and injunctive relief. (*Id.* at 8-10, Page ID 9-11).

---

[1]Plaintiff also invokes the Religious Freedom Restoration Act (RFRA), but the Supreme Court found that RFRA was unconstitutional as applied to the States. *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997); *see Cutter v. Wilkinson*, 423 F.3d 579, 582 (6th Cir. 2005).

The matter is now before me on a motion for summary judgment by all defendants (other than Mr. Wilcoxson-Bey)[2] based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (docket # 22). Plaintiff has filed his response. (docket #s 29, 30). For the reasons set forth herein, I recommend that all plaintiff's claims against defendant Wilcoxson-Bey be dismissed for failure to state a claim upon which relief can be granted. I recommend that all plaintiff's claims against ICF defendants Prelesnik, Wyma, Pattison, and Stoddard be dismissed because they are moot. I recommend that the motion for summary judgment by defendants Heyns, Martin, Prelesnik, Wyma, Pattison, and Stoddard (docket # 22) be granted.

## Applicable Standards

A. <u>Summary Judgment Standards</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith*

---

[2]Mr. Wilcoxson-Bey has appeared in this matter and he is proceeding *pro se*. (*see* docket # 39).

*Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the

-4-

plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

    B. <u>Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies</u>

    Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; Booth, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the

remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to

enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.*  The Policy Directive also provides the following directions for completing Step I grievance forms:  "The issues should be stated briefly but concisely.  Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted.  *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020,

---

[3]A copy of the policy directive is found in the record.  *See* docket # 23-2, Page ID 124-30.

at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice.

Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Discussion

### I. Mootness

Plaintiff is an inmate at KCF. Defendants Prelesnik, Wyma, Pattison, and Stoddard are or were employed at ICF.[4] The four ICF defendants no longer have any authority over the conditions of plaintiff's confinement. Plaintiff's claims for injunctive and declaratory relief against defendants Prelesnik, Wyma, Pattison, and Stoddard are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### II. Failure to State a Claim

The court is required to dismiss any claim that is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c). I recommend that all plaintiff's claims against defendant Wilcoxson-Bey be dismissed

---

[4] Defendants brief indicates that defendants Prelesnik and Wyma have retired and that defendant Stoddard is now the warden at the Carson City Correctional Facility (DRF). (Def. Brief at 1, 10-11, Page ID 114, 120-21). These representations will not be considered because defendants' attorney failed to submit evidence supporting these statements. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

Case 1:14-cv-00679-PLM-PJG ECF No. 55 filed 02/24/15 PageID.344 Page 10 of 14

for failure to state a claim on which relief may be granted. Plaintiff did not allege that defendant Wilcoxson-Bey was a state employee. There are no allegations that he took any specific action under color of state law. Plaintiff merely alleges that Wilcoxson-Bey was a member of the "MDOC chaplaincy board"[5] (Compl. at ¶ 6, Page ID 3) and that plaintiff directed communications to him. (*Id.* at ¶ 24, Page ID 7). This is insufficient to state any claim against defendant Wilcoxson-Bey.

### III. Motion for Summary Judgment

    A.    Grievances

Plaintiff pursued four grievances through Step III of the MDOC's grievance process before he filed this lawsuit.

    1.    ICF-12-03-0401-28e

On March 5, 2012, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ICF-12-03-0401-28e (docket # 23-2, Page ID 140). Plaintiff complained on December 31, 2011, that defendant Pattison had rejected a large, laminated poster. Plaintiff's grievance was rejected at Step I of the grievance process because it was untimely. Plaintiff pursued an appeal to Step II. On April 11, 2012, Warden Prelesnik upheld the rejection of the grievance because it was untimely and because it raised multiple issues. (docket # 23-2, Page

---

[5]The "chaplaincy board" appears to be a reference to an advisory body known as the Chaplaincy Advisory Council (CAC). The CAC is a group of volunteers, representing various faith groups and judicatories and they exist to advise the MDOC regarding religious issues. *See* http://www.michigan.gov/corrections/0,4551,7-119-68854_68856_63694-208274--,00.html (Last visited Feb. 23, 2015).

-10-

ID 139).  Plaintiff filed an appeal.  On October 30, 2012, the Grievance and Appeals Section upheld the Step II decision rejecting plaintiff's grievance.  (docket # 23-2, Page ID 137).

### 2. ICF-12-03-0394-15e

On March 5, 2012, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ICF-12-03-0394-15e (docket # 23-2, Page ID 144).  In this grievance plaintiff complained that on February 12, 2012, RUO Johnson had handed him 11 letters with postmarks ranging from August 22, 2011, to February 2012.  The Step I response indicated that plaintiff's allegation was being investigated, but the mail room staff had no knowledge of any hold that had been placed on plaintiff's mail.  (*Id.*).  Plaintiff filed an appeal.  On May 24, 2012, Warden Prelesnik denied plaintiff's grievance.  He noted that on occasion, delays of 2-3 days could occur when incoming mail was searched for contraband material, but there was no evidence that any letter had been withheld as long as plaintiff claimed.  (docket # 23-3, Page ID 143).  Plaintiff pursued an unsuccessful appeal to Step III.  On October 18, 2012, the Grievance and Appeals Section upheld the warden's Step II decision denying plaintiff's grievance.  (docket # 23-3, Page ID 141).

### 3. ICF-12-03-0402-20c

On March 6, 2012, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ICF-12-03-0402-20c (docket # 23-3, Page ID 148).  In this grievance, plaintiff complained that on February 7, 2012, defendant Pattison had issued a notice of package/mail rejection regarding a "Circle Seven necklace charm."[6]  Plaintiff's grievance was

---

[6]Defendant Pattison did not seek dismissal of plaintiff's claim corresponding to this grievance on the basis of lack of exhaustion.  (Def. Brief at 6, Page ID 119).  Pattison sought

denied at Step I (*Id.*) and he filed an appeal to Step II. On May 9, 2009, Warden Prelesnik denied plaintiff's appeal:

> The grievance, Step I response and your Step II appeal have been reviewed. PD 05.03.150, "Religious Beliefs and Practices of Prisoners," paragraph II states in part that Attachment A and B identifies personal religious property authorized by the CFA Deputy Director for prisoners who are members of a religious group recognized by the Department. Only religious property identified on the attachments shall be permitted. The Circle Seven necklace charm is not listed as allowable religious property on Attachment A or B. Prior to the grievant's religious necklace being placed on Attachment A or B, the Reincarnate Temple of the Moorish Science Temple of America must [be] recognized by the Department as a recognized religion. The grievant is directed to paragraph L which outlines the criteria to obtain Department recognition for his religion. Based on the investigation provided in this matter, I find that the Step I grievance was appropriately rejected. For the reason noted, your Step II grievance is denied.

(docket # 23-2, Page ID 147). On August 31, 2012, the Grievance and Appeals Section upheld the Step II decision. (docket # 23-3, Page ID 145).

### 4. ICF 12-03-0420-15a

On March 9, 2012, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ICF-12-03-0420-15a (docket # 23-3, Page ID 154). In this grievance, plaintiff complained that on March 1, 2012, a mail room employee named Latagne had improperly rejected a one-page document on the ground that it was a personal official document like a social security card, marriage certificate, etc., which is prohibited under ICF OP 05.03.118 #8. (docket # 23-3, Page ID 154, 156). Plaintiff's grievance was denied at Step I and he pursued an appeal. On April 26, 2012, Acting Warden Norwood denied plaintiff's grievance at Step II:

> In this grievance you state that your mail containing a blank petition form, which offers no personal information concerning anyone did not meet the intent of the ICF OP cited for the mail rejection. The grievant states that no operating procedure can supersede a policy

---

dismissal of this claim against him on the ground that it was moot. (*Id.* at 7-8, Page ID 120-21).

directive. The grievant also states that this form is part of an ongoing legal matter concerning grievant's membership within the Moorish Science Temple of America, Reincarnate Temple System.

The Step I Respondent, P. Clement investigated your grievance and cited the document was rejected based on OP 05.03.118; #8 which was upheld by the hearing officer. The Mailroom supervisor does not have the authority to change the decision of the hearing officer.

In the Step II appeal you state that the grievant does not seek the Mail Room supervisor to overturn the hearing officer's decision. The rejection was based on OP 05.03.118, #8 as stated was in the strict form of the OP. The grievant claims that the rejection has substantially burdened grievant's religious exercise without any compelling governmental interest as this religious document is to be used to petition the court for redress. The grievant states a copy of Executive Memorandum of April 29, 1994 is attached to his Step II appeal.

The grievance, Step I response and your Step II appeal have been reviewed. The Step I Respondent stated that she requested ARUS Wayne to interview you, which he states he did. 03.02.130 Prisoner/Parolee Grievances[] paragraph F-l states in part that a grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum." The grievant did not include the Executive Memorandum with his Step II grievance. The denial of the petition does not substantially burden the grievant's exercise of freedom of religion. Based on the record and investigation provided in this matter, I find that the Step I grievance was appropriately rejected. For the reason noted, your Step II grievance is denied.

(docket # 23-3, Page ID 153). On August 27, 2012, the Grievance and Appeals Section upheld the Step II decision. (docket # 23-3, Page ID 151).

### A. Exhaustion

Defendants Heyns, Martin, Prelesnik, Wyma, Pattison, and Stoddard have raised and supported the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff's argument that the statutory exhaustion requirement did not apply to his claims because he is

attempting to pursue those claims as a class action (Plf. Brief at 11, Page ID 211) is frivolous. The court has never certified any class. Plaintiff is proceeding *pro se* and he has always been limited to representing himself on his own claims. *See* 28 U.S.C. § 1654. I recommend that defendant's motion for summary judgment be granted.

**Recommended Disposition**

For the reasons set forth herein, I recommend that all plaintiff's claims against defendant Wilcoxson-Bey be dismissed under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted. I recommend that all plaintiff's claims against ICF defendants Prelesnik, Wyma, Pattison, and Stoddard be dismissed because they are moot. I recommend that defendant's motion for summary judgment (docket # 22) be granted and that plaintiff's claims against defendants Martin, Prelesnik, Stoddard, Wyma, Pattison, and Heyns be dismissed.

Dated:  February 24, 2015         /s/  Phillip J. Green
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).